UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JEREMY D. SOUTH, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 22-5356 (RK)(JBD) |
| | : | |
| v. | : | |
| | : | |
| NEW JERSEY DEPARTMENT OF | : | **MEMORANDUM OPINION** |
| CORRECTIONS et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

This matter comes before the Court on Plaintiff's filing of a civil rights Complaint, which is titled as his "First Amended Complaint" and concerns alleged inadequate medical care that Plaintiff received during the period from 2016-2019. (ECF No. 1.) The Court previously granted Plaintiff's application to proceed *in forma pauperis*. The Court now screens the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), and, for the reasons explained below, dismisses the Plaintiff's civil rights claims as untimely and for failure to state a claim for relief. If Plaintiff can provide a basis for equitable tolling and cure the deficiencies in his federal claims, he may submit an amended complaint within 30 days. If Plaintiff does not submit an amended complaint within 30 days, the order dismissing his complaint shall automatically convert to a dismissal with prejudice.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

a. **The First Action**

This is Plaintiff's second civil rights action involving the same claims and defendants. Plaintiff brought the first action *in forma pauperis* on or about December 20, 2017. (Civ. Act. No. 17-13387, ECF No. 1.) The complaint in the first action named the following defendants: the New

Jersey Department of Corrections ("NJDOC"); Christopher S. Porrino, as Attorney General for the State of New Jersey; Commissioner Gary M. Lanigan; St. Francis Medical Center ("St. Francis"); Rajiv K. Shah, M.D. ("Dr. Shah"); Perera Sharmalie, M.D.; Paul Weiser, M.D.; Cynthia Merkling; RNFA Cielito; Louis G. Fares, II, M.D.; UMDNJ; Denise V. Rogers; University Correctional Health Center ("UCHC"); Elizabeth Topol; and John and Jane Does I-II. (Civ. No. 17-13387, ECF No. 1.)

On October 31, 2018, the Court granted Plaintiff's IFP application and screened the complaint for dismissal under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. In its screening opinion, the Court summarized the facts and relief sought as follows:

> South alleges that he suffers from a clinical history of "stomach problems" such as nausea, vomiting, and dehydration. (*Id.* ¶¶ 10-11.) It appears that the East Jersey State Prison physician, Dr. Winetsky, conducted a number of tests on South that were inconclusive as to the cause of these issues. (*Id.* ¶ 12.) South claims that after he filed a series of Inmate Remedy System Forms, Dr. Winetsky ordered additional medical testing. (*Id.* ¶¶ 13-15.) South additionally claims he wrote to Topol, UCHC, and UMDNJ regarding his medical complaints. (*Id.* ¶ 16.)
>
> On February 19, 2016, South underwent a CAT Scan at St. Francis Medical Center that revealed two possible proximal malrotations, described by South as "twisted bowels." (*Id.* ¶¶ 18-19.) Following that CAT scan, South again consulted with Dr. Winetsky and Dr. Rajiv Shah of St. Francis Medical Center. (*Id.* ¶ 20.) Dr. Shah recommended South undergo another CAT scan in six months. (*Id.* ¶ 21.)
>
> On August 9, 2016, South underwent a second CAT scan, which was performed by defendants Perera and Sharmalie. (*Id.* ¶ 23.) Based on the results of that CAT scan, it appears that Dr. Shah and Dr. Winetsky recommended that South undergo surgery for a possible proximal malrotation. (*Id.*)
>
> On October 19, 2016, South was transferred to St. Francis Medical Center for an exploratory laparotomy. (*Id.* ¶ 27.) At that time, Dr. Shah allegedly informed South, for the first time, that his "pancreas may need to be removed due to migration and displacement within the body cavity." (*Id.*) Prior to his surgery on October 20, 2016, South signed a consent form that he insists did

2

not include consent for hernia surgery. (*Id.* ¶ 28.) After surgery was completed, Dr. Shah told South that the surgery was "uneventful" and explained that during the surgery he moved the bowels, "possibly fix[ing] the problem." (*Id.* ¶¶ 34-38.)

South was transported back to East Jersey State Prison on October 25, 2016, but he alleges that he had not yet recovered from surgery and should not have been discharged. (*Id.* ¶39.) Shortly thereafter, South was seen by Dr. Winetsky who told him that the surgery was "uneventful" and that despite the surgery, he would probably still get sick. (*Id.* ¶ 40.)

In early November 2016, South alleges he had multiple video teleconferences regarding his condition with representatives from St. Francis Medical Center, UMDNJ, UCHC, and the Department of Corrections. (*Id.* ¶¶ 43-46.) During a video teleconference with Dr. Shah, St. Francis Medical Center, and the Department of Corrections, South reported a bulge on the lateral side of his abdomen that had been presenting intermittently. (*Id.* ¶ 46.) Dr. Shah allegedly told him the bulge could be a hernia. (*Id.* ¶ 47.)

On November 22, 2016, South was seen by Dr. Winetsky, who confirmed the hernia diagnosis and ordered South to wear an abdominal binder. (*Id.* ¶ 54.) On November 28, 2016, South received the abdominal binder and reported to "UMDNJ and/or UCHC of the pain I was experiencing due to the untreated hernia and following bowel surgery." (*Id.* ¶ 55.) On December 1, 2016, South signed consent forms for a "gastroenterology and colonoscopy." (*Id.* ¶ 56.) The complaint does not indicate that South received any additional treatment until June 17, 2017, when he reported to Mildred Johnson, RN "of the pain and suffering [he] was experiencing as a result of Defendants' failure to treat." (*Id.* ¶ 57.)

South seeks against each defendant $10,000 in compensatory damages and $50,000 in punitive damages. (*Id.* ¶¶ 72-73.) South further seeks injunctive relief in the form of an Order directed at the Department of Corrections, UMDNJ, or UCHC to order an endoscopic exam and hernia surgery at J.F.K. Memorial Hospital, Cooper Medical Center, or Robert Wood Johnson; and barring further treatment of South at St. Francis Medical Center. (*Id.* ¶¶ 67-70.) South additionally seeks an injunction against the Department of Corrections barring it from transporting him in a 'kennel-style' bifurcated-van." (*Id.* ¶ 71.)

(*Id.*, ECF No. 6 at 2-4.)

The Court dismissed with prejudice the damages claims brought pursuant to 42 U.S.C. § 1983 against the NJDOC and the individual defendants in their official capacities. (*Id.* at 7-8.) The Court construed Plaintiff to raise claims of inadequate medical care and supervisory liability under § 1983 against the individual defendants and dismissed these claims for failure to state a claim for relief, finding that Plaintiff had not sufficiently alleged deliberate indifference to his serious medical needs or supervisory liability. (*Id.* at 8-13.) The Court also denied Plaintiff's motion for pro bono counsel and provided Plaintiff with leave to amend within 30 days. (*Id.* at 13-14.)

In the accompanying Order, the Court notified Plaintiff that he could "submit a proposed amended complaint within thirty (30) days from the date this Order is entered which addresses the deficiencies of the complaint only with respect to those claims dismissed without prejudice." (ECF No. 7.) The Court further instructed Plaintiff that he could "not amend the complaint as to those claims dismissed with prejudice." (*Id.*)

More than three months later, on February 4, 2019, the Court received a letter from Plaintiff inquiring into the status of his case and indicating that he had mailed an amended complaint to the Court on November 20, 2018. *Id.* On February 7, 2019, the Court entered an Order advising that it had no record of receiving Plaintiff's amended complaint and providing leave to resubmit the amended complaint, along with proof of mailing, no later than February 28, 2019. (ECF No. 9.)

On February 19, 2019, the Court received a letter from Plaintiff attaching a one-page document that Plaintiff described as his "first amended complaint." (ECF No. 10.) In that same letter, Plaintiff indicated that he was "requesting that the above- captioned matter be dismissed, without prejudice." *Id.* Subsequently, on April 15, 2019, Plaintiff submitted a follow-up letter to the Court, in which he appeared to be requesting a "second opinion regarding [his] medical records." (ECF No. 11 at 1.)

4

On April 30, 2019, the Court issued a Memorandum Opinion finding that Plaintiff had failed to submit an amended complaint that complied with the conditions set forth in the Court's Order dated October 31, 2018. (ECF No. 13.) On the same date, the Court entered an Order dismissing Plaintiff's complaint without prejudice, based on Plaintiff's request for voluntary dismissal and his failure to submit an amended complaint within the time period specified in the Court's prior orders. (*Id.*)

Nearly 10 months later, on February 21, 2020, the Court received a letter from Plaintiff, in which he appeared to request appointment of pro bono counsel pursuant to 28 U.S.C. § 1915(e)(1) and seek guidance from the Court on how to proceed with pursuing his case. (ECF No. 14.)

On February 28, 2020, the Court denied Plaintiff's request for pro bono counsel and noted that Plaintiff could submit an IFP application and a complaint in a new action; the Court declined to make any advance determinations about timeliness if Plaintiff were to submit a new complaint. (ECF No. 15.)

Nearly a year later, on February 21, 2021, Plaintiff filed a new IFP application (without a complaint), and the text of Plaintiff's proposed order listed Civil No. 17-13387 as the docket number. (*See* ECF No. 16.) On April 4, 2022, Plaintiff submitted a motion for leave to submit an Amended Complaint, which the Clerk docketed in Civ. No. 17-13387. (*See* ECF No. 17.)

On April 5, 2022, the Court denied Plaintiff's IFP application and his motion for leave to submit an amended complaint, indicating that he may only file a new action. (ECF No. 18.)

On or about July 7, 2022, Plaintiff's filed a new IFP application, Proposed First Amended Complaint, civil cover sheet, and cover letter, which the Clerk docketed in Civ. No. 17-13387. (ECF No. 20.) The Court directed the Clerk to file the IFP application and Proposed Amended Complaint as a new case.

### b. The Current Action

The current action was docketed on September 1, 2022 (Civ. No. 22-5356, ECF No. 1), but the District Court ordered that "the complaint be filed Nunc Pro Tunc as of 7/11/22." (ECF No. 2.) After the Honorable Freda L. Wolfson's retirement, Civ. No. 22-5356 was transferred to the Honorable Georgette Castner, who granted Plaintiff's IFP application and directed the Complaint to be filed. (ECF Nos. 3, 5.) The matter was subsequently transferred to the undersigned. (ECF No. 7.)

Plaintiff First Amended Complaint reiterates the allegations from the first action and provides additional facts through March 2019.

Plaintiff alleges that he has a history of "stomach problems," including nausea, vomiting, and diarrhea. (Complaint at ¶ 6.) After testing was inconclusive, Plaintiff submitted inmate remedy forms and complaints to Defendant Elizabeth Torpol in January 2016. (*Id.* at ¶¶ 12-16.) Plaintiff thereafter received a CAT scan on February 19, 2016, and was diagnosed with possible twisted bowels. (*Id.* at ¶¶ 18-19.) Dr. Shah allegedly "delayed treatment" and instead recommended an additional CAT scan in six months. (*Id.* at ¶¶ 21-22.) On August 9, 2016, another CAT scan was performed by Defendant Sharmalie, and Dr. Shah and Dr. Winetsky recommended surgery. (*Id.* at ¶ 23.) Surgery was scheduled for October 19, 2016. (*Id.* at ¶ 26.)

At St. Francis Medical Center, Dr. Shah informed Plaintiff that his pancreas might need to be removed, and Plaintiff signed a consent form for an exploratory laparotomy. (*Id.* at ¶¶ 27-29.) Plaintiff allegedly did not consent to hernia surgery. (*Id.* at ¶ 30.) Dr. Shah performed surgery for recurrent small bowel obstruction on October 20, 2016, and he informed Plaintiff that the surgery was uneventful and may have fixed the problem. (*Id.* at ¶¶ 32-37.)

Plaintiff was transported back to EJSP despite informing Dr. Shah that he had not recovered from the surgery and was not fit for transport. (*Id.* at ¶ 39.) On October 26, 2016, Dr. Winetsky ordered additional tests and informed Plaintiff that the surgery was uneventful but that he may still "get sick." (*Id.* at ¶¶ 40-41.) On August 3, 2016 "a Gastroenterology and Colonoscopy" were ordered by UMDNJ and/or UCHC. (*Id.* at ¶¶ 42-44.) On November 4, 2016, Plaintiff's staples were removed. (*Id.* at ¶ 50.)

On November 8, 2016, Plaintiff had a video conference with Dr. Louis G. Fares II and St. Francis Medical Center. (*Id.* at ¶ 45.) Plaintiff informed Dr. Shah during a videoconference that he had a bulge on his lateral side below his navel, and Dr. Shah diagnosed a possible hernia, but said it was too early to tell. (*Id.* at ¶¶ 46-47.)

On November 22, 2016, the hernia was confirmed by Dr. Winetsky. (*Id.* at ¶ 51.) Dr. Winetsky told Plaintiff that hernia surgery was "typical" and that "it was hard" for Dr. Shah to put his "bowels back together" and also ordered an abdominal binder for Plaintiff, which he received on November 28, 2016. (*Id.* at ¶¶ 52-55.)

Plaintiff allegedly informed UMDNJ and/or UCHC that he was in pain from the untreated hernia and following bowel surgery. (*Id.* at ¶ 55.) On December 1, 2016, Plaintiff consented to the Gastroenterology and Colonoscopy. (*Id.* at ¶ 57.)

On June 17, 2017,[1] Plaintiff saw Ms. Mildred Johnson[2] and complained about "the pain and suffering he was experiencing as a result of Defendants failure to treat medically ordered tests from [E]ast Jersey State Prison." (*Id.* at ¶ 58.)

---

[1] Plaintiff does not explain the gap between signing the consent forms on December 1, 2016 and his visit with Johnson on June 17, 2017, at South Woods State Prison, but it appears that he was transferred from East Jersey State Prison to South Woods State Prison at some point during this time period.

[2] Plaintiff alternately refers to Johnson as a registered nurse ("RN") and a doctor.

On or about June 8, 2018,[3] Plaintiff saw a doctor as South Woods State Prison who explained that his hernia was a result of the surgery, ordered blood work and a CAT scan, and set up a video conference with Dr. Shah. (*Id.* at ¶ 57.)

Plaintiff received a CT Scan at St. Francis Medical Center on July 24, 2018. (*Id.* at ¶ 61.) Plaintiff met with Johnson on August 29, 2018, about his CT scan results, and she claimed that his test results showed there was nothing wrong with him, that there were no records that he had a hernia, and that he was "making it up." (*Id.* at ¶ 62.) Johnson nevertheless scheduled Plaintiff to speak with Dr. Shah. (*Id.*)

At the video conference on October 2, 2018 with Dr. Shah, Plaintiff consented to hernia surgery. (*Id.* at 64.) On October 25, 2018, Dr. Fares performed the surgery, and Plaintiff was sent back to a medical unit at SWSP the same day. (*Id.* at 68.)

In November 2018, Plaintiff received a notice from Judge Wolfson, permitting him to file his Amended Complaint. (*Id.* at ¶ 68.)

On November 29, 2018, Plaintiff met with Dr. Johnson for a physical and she scheduled a follow up with Dr. Fares, who would tell him how long to wear the abdominal binder. (*Id.* at ¶ 70.)

On December 24, 2018, Plaintiff saw a nurse for vomiting and abdominal pain, allegedly from the hernia surgery, and she scheduled him to see the doctor because she could not order a special diet or tests. (*Id.* at ¶ 71.) At a video conference on December 18, 2018, Plaintiff told Dr. Shah and Dr. Johnson that he had pain and discomfort from the hernia surgery. (*Id.* at ¶ 72.) On

---

[3] There are no fact about the gap between June 17, 2017 and June 8, 2018.

October 25, 2018,[4] Dr. Shah and Dr. Johnson inspected the lump and ordered a CT scan and a consult with Dr. Fares who performed the hernia surgery. (*Id.* at ¶ 73.)

On February 5, 2019, Plaintiff received mail from Judge Wolfson, stating that the Court had no record of his amended complaint. (*Id.* at ¶ 76.) Plaintiff contends that he "on or around February 20, 2019, [he] returned [his] amended complaint to Judge Wolfson via prison legal mail." (*Id.* at ¶ 77.) Plaintiff also claims that "on or around February 20, 2019, he "received [his] postage remit from the mail room that I mailed to Judge Wolfson" and realized that he "did not sight [sic] Dr. Fares" who performed his hernia corrective surgery in October 2018." (*Id.* at ¶ 78.)

On January 16, 2019, Plaintiff had a video conference with Dr. Fares and told him that he was still experiencing "pain every day" from the surgery. (*Id.* at ¶ 81.) On March 5, 2019, Plaintiff had another video conference with Dr. Fares regarding the hernia revision surgery and the CT scan, and Dr. Fares told Plaintiff that his CT "showed no problems" and that the "little discomfort" he was feeling was normal because he was still healing. Plaintiff alleges that he "did not dispute [Dr. Fares'] findings," but is unsure of his "judgment" and is "not able to get a second opinion." (*Id.*)

Plaintiff brings claims under § 1983 and the New Jersey Civil Rights Act ("NJCRA") and has sued Dr. Shah,  Dr. Fares, Dr. Perera Sharmalie, Dr. Paul Wieser, Dr. Cynthia Merkling, RNFA, Dr. Cielito, RNFA, and Dr. Denise Rogers, who are allegedly "decision maker[s], possessing final authority to establish Plaintiff's treatment and prisoner-patient policy" at St. Francis. (*Id.* at 2-8.) Plaintiff also sues St. Francis Medical Center, "University of Medical and Dentistry of New Jersey" ("UMDNJ"), University Correctional Healthcare ("UCHC"), and UCHC's employee, Elizabeth Torpol. (*Id.* at 8-10.) Plaintiff seeks injunctive relief to force the NJDOC, UMDNJ, or UCHC to order more tests, procedures, or surgery at specific hospitals, and

---

[4] This is the date of Plaintiff's hernia surgery and appears to be a typo.

to prevent the NJDOC from transporting him in a kennel-style van and also seeks damages. (*Id.* at 18-19.)

## II.    DISCUSSION

### a.  Legal Standard

Under the Prison Litigation Reform Act, Pub. L. 104-134, §§ 801–810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review prisoner complaints when the prisoner is proceeding *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B). The PLRA directs district courts to *sua sponte* dismiss claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At the pleading stage, the Court accepts the facts alleged in the pro se complaint as true, draws all reasonable inferences in the plaintiff's favor, and asks only whether the complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations, however, do not suffice. *Iqbal*, 556 U.S. at 678.

### b.  The Complaint is Untimely

The Court first considers whether Plaintiff's claims alleging inadequate medical care between January 2016 and March 2019 are timely. The Complaint <u>in this action</u> was submitted

10

for filing on June 25, 2022 and deemed filed by the Court on July 11, 2022. Even if the Court gives Plaintiff the benefit of the June 25, 2022 filing date, his Complaint is untimely.

Plaintiff's claims are based on § 1983 and the NJCRA, which each have a two-year statute of limitations. *See, e.g., Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir.2010) ("A [§ ] 1983 claim is characterized as a personal-injury claim and thus is governed by the applicable state's statute of limitations for personal-injury claims," which in New Jersey is two years); *Lapolla v. Cnty. of Union*, 157 A.3d 458, 464 (N.J. Super. Ct. App. Div. 2017) ("The statute of limitations for claims under the NJCRA is two years.") (citing N.J. Stat. Ann. § 2A:14-2(a)).

The statute of limitations begins to run "when the wrongful act or omission results in damages." *Dique*, 603 F.3d at 185–86 (internal quotation marks omitted). Plaintiff alleges that Dr. Shah delayed in performing surgery to correct a small bowel obstruction, which was ultimately performed on October 20, 2016. That surgery allegedly caused a hernia, which Dr. Winetsky confirmed on November 22, 2016. Dr. Winetsky gave Plaintiff an abdominal binder for the hernia and ordered other tests, and there is an unexplained gap in treatment from December 2016 until June 2017, when Plaintiff met with Dr. Johnson at South Woods State Prison, who ordered a CT scan and a consult with Dr. Shah. Plaintiff consented to hernia surgery, and Dr. Fares performed the hernia surgery on October 25, 2018. Plaintiff alleges that he experienced vomiting and pain due to the hernia surgery, and consulted with Dr. Fares in January and/or March 2019, but Fares told him his CT was normal and that he was still healing from the surgery.

Plaintiff allegations span from January 2016 through March 2019, and, at the earliest, he filed the Complaint in this action on June 25, 2022. All the inadequate care alleged in the

complaint occurred well outside the two-year limitations period for civil rights claims and his claims are, therefore, untimely.[5]

Plaintiff appears to believe that this action is timely because he submitted a "First Amended Complaint" in Civ. No. 17-13387 on June 25, 2022, in response to Judge Wolfson's Order permitting him to file a new action. However, Plaintiff submitted that complaint long after Judge Wolfson dismissed Civ. No. 17-13387 without prejudice on April 30, 2019, and denied further leave to amend in that action. As a general matter, "[a] statute of limitations is not tolled by the filing of a complaint subsequently dismissed without prejudice, as the original complaint is treated as if it never existed." *Brennan v. Kulick*, 407 F.3d 603, 606 (3d Cir. 2005) (citing *Cardio–Medical Assocs. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 77 (3d Cir. 1983)). Therefore, the dismissal of a complaint without prejudice after the statute of limitations has run forecloses the plaintiff's ability to remedy the deficiency underlying the dismissal and refile the complaint. *Ahmed v. Dragovich*, 297 F.3d 201, 207 (3d Cir. 2002). The Third Circuit has recognized one exception: "when a complaint is filed within the statute of limitations but is subsequently dismissed without

---

[5] Plaintiff has not alleged facts that would trigger the discovery rule or entitle him to equitable tolling of the limitations period. New Jersey law governs when accrual of a § 1983 claim may be delayed pursuant to the discovery rule and when a limitation period may be equitably tolled. *See Dique*, 603 F.3d at 185; *Freeman v. State*, 347 N.J. Super. 11, 788 A.2d 867, 878 (App. Div. 2002). The discovery rule postpones a claim from accruing if a plaintiff is reasonably unaware that he has suffered an injury or, even though he is aware of the injury, that it was the fault of an identifiable person. *See Caravaggio v. D'Agostini*, 166 N.J. 237, 765 A.2d 182, 187 (2001). In addition, "equitable tolling may be applied where 'the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass' or where a plaintiff 'has in some extraordinary way been prevented from asserting his rights.'" *Freeman*, 788 A.2d at 879-80 (internal citations and quotations omitted). Equitable tolling may be appropriate where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum. *Id.* "[A]bsent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." *Id.*

prejudice in an order containing conditions for reinstatement within a specified time period, the statute of limitations is tolled provided that the plaintiff meets those conditions." *Brennan* 407 F.3d at 607. The time requirement "is important because, without it, there would be nothing to 'prevent a plaintiff from indefinitely extending the limitations period.'" *Moore v. Middlesex Cnty. Prosecutor's Office*, 738 F. App'x 100, 104 (3d Cir. 2018) (citing *id.*) The dismissal becomes final and appealable when the time for amendment has expired or the plaintiff declares his intention to stand on the complaint. *Id.*

Here, Plaintiff does not fit within this exception because he did not file an amended complaint in Civ. No. 17-13387 within the period provided by the Court. Indeed, after he claimed that he mailed a copy of his amended complaint to the Court, which was never received, the Court provided Plaintiff with another opportunity to submit his amended complaint by February 28, 2019. But Plaintiff did not submit his amended pleading as instructed. And the Court dismissed Civ. No. 17-13387 without prejudice on April 30, 2019, and denied Plaintiff's subsequent attempts to amend or reopen the matter. Thus, the Complaint in this action, which he filed on June 25, 2022 at the earliest, does not relate back to the complaint in Civ. No. 17-13387. The Court therefore dismisses the Complaint as untimely.

### c. The Complaint Also Fails to State a Claim for Relief

The Complaint in this action also fails to state a claim for relief under § 1983 or the NJCRA.[6] "To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or the laws of the United States committed by a person acting under the color of state law." *Natale v. Camden Cnty. Correctional Facility*, 318 F.3d 575, 580–81 (3d Cir. 2003) (citations omitted). Claims under the NJCRA are modeled on § 1983 and

---

[6] Because the NJCRA is the state law analogue to § 1983, the Court considers them together.

based on violations of the New Jersey and United States Constitutions. *See Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011) (noting that the NJCRA "was modeled after 42 U.S.C. § 1983"); *Perez v. Zagami, LLC*, 94 A.3d 869, 875 (N.J. 2014) (stating that the NJCRA is "a state law analogue to Section 1983") (fn omitted).

Here, the Court construes Plaintiff to allege violations of his right to adequate medical care under the Eighth Amendment and the NJCRA. The Eighth Amendment, through its prohibition of cruel and unusual punishment, forbids the imposition of "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 32 (1993). In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that prison officials violate the Eighth Amendment when they are deliberately indifferent to a prisoner's serious medical needs. *Id.* at 104–05. To succeed on an Eighth Amendment medical care claim, "a plaintiff must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) ). "[D]eliberate indifference entails something more than mere negligence" and is a subjective standard that requires the official to both "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and to "also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 835–37 (1994). "Deliberate indifference" is a state of mind equivalent to reckless disregard of a known risk of harm. *See Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994). The Third Circuit has "found deliberate indifference in a variety of contexts including where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, and (4) prison authorities prevent

14

an inmate from receiving recommended treatment for serious medical needs." *Pearson v*, 850 F.3d at 538 (citing *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

Although Plaintiff has serious medical needs, he cannot show that any of the individual Defendants acted with deliberate indifference. As noted in Judge Wolfson's opinion in the first action, Defendants provided significant medical care to Plaintiff. Although Plaintiff alleges that Dr. Shah delayed his bowel surgery for six months in favor of a repeat CAT scan, he provides insufficient facts to suggest that Dr. Shah acted with deliberate indifference to a substantial risk of serious harm in taking that course of action. Similarly, Plaintiff's claim that the bowel surgery resulted in a hernia could potentially amount to medical negligence, but there are no facts to suggest that Dr. Shah performed the bowel surgery in a reckless manner. There is a noticeable gap between Dr. Winetsky's diagnosis of Plaintiff's hernia at East Jersey State Prison and when Plaintiff received treatment at South Woods State Prison. But Plaintiff does not provide any facts showing that any of the individual Defendants acted with deliberate indifference to his need for medical care during that period. Plaintiff also fails to show that Dr. Fares acted with deliberate indifference in performing hernia surgery on Plaintiff or in assuring him that his CT was normal and that his pain was part of the healing process, and there are insufficient facts suggesting that he performed the hernia surgery with a reckless disregard for Plaintiff's safety or acted with deliberate indifference to Plaintiff's pain post-surgery. In sum, like the complaint in the prior action, Plaintiff's Complaint in this action also fails to state a claim for relief under § 1983 or the NJCRA.

Plaintiff has also sued the individual Defendants as "decisionmakers" who were in charge of healthcare policy for inmates. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior" under § 1983.

15

*Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012). Rather, state actors are liable only for their own unconstitutional conduct. *Id.* As explained in *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 316–17 (3d Cir. 2014), "[t]here are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates. First, liability may attach if they, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *Id.* (citing *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). And "[s]econd, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct. *Id.* (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir.1995)). Plaintiff may be seeking to hold Shah, Fares, Sharmalie,[7] Wieser, Merkling, Rogers, and Topol liable as policymakers, but this allegation is conclusory and fails to connect any policies to the allegedly inadequate medical care he received.

Plaintiff likewise fails to state a claim for relief against St. Francis, UMDNJ, and UCHC. Like the individual Defendants, entities who provide healthcare services to inmates cannot be held liable under § 1983 or the NJCRA for the unconstitutional acts of its employees under a theory of respondeat superior. *See Natale*, 318 F.3d at 583–84. Rather, a healthcare provider is subject to liability only if it "had a policy or custom that caused [the] deprivation of a constitutional right." *Defreitas v. Montgomery Cty. Corr. Facility*, 525 F. App'x 170, 176 (3d Cir. 2013) (citing *Monell v. N.Y. City Dept. of Soc. Servs.*, 436 U.S. 658, 693–94 (1978)). Here, Plaintiff has not provided

---

[7] Sharmalie also performed a CAT scan on Plaintiff in August 2016, but there are no allegations that he acted with deliberate indifference.

facts showing that St. Francis, UMDNJ, and/or UCHC had policies that caused any violations of his constitutional rights.

For all these reasons, the Complaint fails to state a claim for relief and is dismissed on that basis.

### III.    CONCLUSION

For these reasons explained in this Memorandum Opinion, the Court dismisses the Complaint without prejudice as untimely and for failure to state a claim for relief. Because Plaintiff has not had the opportunity to provide facts in support of tolling or cure the deficiencies in his claims in this action, the Court will provide him with 30 days to submit an amended complaint and a request to reopen this case. Plaintiff is also notified that the Order dismissing this action without prejudice shall automatically convert to a dismissal with prejudice if Plaintiff does not submit an amended complaint within the 30-day period. An appropriate Order follows.

**ROBERT KIRSCH**
**United States District Judge**

17